### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| SHERRELL C. TOWNS, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| vs. | ) | CIVIL NO.  05-375-GPM |
| | ) | |
| ANTHONY RAMOS, LT. HOLTON, | ) | |
| DANNY BEDINGER, STEPHEN BAKER, | ) | |
| M. EUBANKS, C/O DAGNER, JERRY | ) | |
| WITTHOFT, CHRISTOPHER CASTEN, | ) | |
| DEBI MIDDENDORF, and UNKNOWN | ) | |
| PARTY MEDICAL TECHNICIANS, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**MURPHY, Chief District Judge:**

Plaintiff, an inmate in the Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983.  In his complaint, Plaintiff presents a litany of factual allegations.  He then sets forth four "legal claims" against all defendants, invoking the federal constitution, the Illinois state constitution, Illinois state law, and rules of the Illinois Department of Corrections.  The Court finds that Plaintiff's organization of his claims is not the most efficient way to address them, particularly because the factual allegations can be separated into seven separate claims, each against just a few of the named defendants.

Accordingly, to facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(f) and 10(b), the Court finds it appropriate to break the claims in Plaintiff's *pro se* complaint into numbered counts, as shown below.  The parties and the Court will use *these* designations in all future pleadings and orders,

unless otherwise directed by a judicial officer of this Court.  The designation of these counts does

not constitute an opinion as to their merit.

    **COUNT 1:**    Against Defendants Eubanks, Baker, and Holton for use of excessive force, in violation of his rights under the Eighth Amendment.

    **COUNT 2:**    Against Defendants Ramos, Bedinger, Jane Doe, and John Doe for denial of medical treatment, in violation of his rights under the Eighth Amendment.

    **COUNT 3:**    Against Defendants Baker, Bedinger, Dagner, Witthoft, and Casten for use of excessive force, in violation of his rights under the Eighth Amendment.

    **COUNT 4:**    Against Defendants Dagner, Witthoft, and Casten for denial of medical treatment, in violation of his rights under the Eighth Amendment.

    **COUNT 5:**    Against Defendant Middendorf for failing to respond to his grievance regarding access to his medical records.

    **COUNT 6:**    Against Defendants Baker, Eubanks, and Holton for retaliation.

    **COUNT 7:**    Against Defendant Middendorf for failing to respond to his grievance over the disciplinary report.

This case is now before the Court for a preliminary review of the complaint pursuant to

28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A.  An action or claim is frivolous if "it lacks an arguable basis either in law or in

fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  Upon careful review of the complaint and any

supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; portions

of this action are legally frivolous and thus subject to summary dismissal.

## COUNT 1

Plaintiff alleges that on June 1, 2003, he was assaulted without provocation by Defendants Baker and Eubanks. He also alleges that Defendant Holton supervised this incident, but he did not intervene. Finally, Plaintiff states that when Baker escorted him to the medical unit, Baker shoved him into a wall several times.

The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under Section 1983. *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000). Furthermore, "one who is given the badge of authority … may not ignore the duty imposed by his office and fail to stop other officers who summarily punish a third person in his presence or otherwise within his knowledge." *Byrd v. Brishke*, 466 F.2d 6, 11 (7th Cir. 1972); *see also Lanigan v. Village of East Hazel Crest*, 110 F.3d 467, 477 (7th Cir. 1997); *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994) (collected cases); *Archie v. City of Racine*, 826 F.2d 480, 491 (7th Cir. 1987).

Applying these standards to the allegations in the complaint, the Court is unable to dismiss any portion of Count 1 at this point in the litigation.

## COUNT 2

After the assault on June 1, Baker took Plaintiff to the medical unit. Plaintiff alleges that two medical technicians, Defendants Jane Doe and John Doe, observed injuries to his scalp and face. Plaintiff alleges that he was denied medical treatment by both technicians, however, and that Defendants Ramos and Bedinger were aware of this denial.

A deliberate indifference claim requires both an objectively serious risk of harm and a subjectively culpable state of mind. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). A deliberate indifference claim premised upon inadequate medical treatment requires, to satisfy the objective element, a medical condition "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Greeno*, 414 F.3d at 653. The subjective component of a deliberate indifference claim requires that the prison official knew of "a substantial risk of harm to the inmate and disregarded the risk." *Id.*; *Farmer*, 511 U.S. at 834. Mere medical malpractice or a disagreement with a doctor's medical judgment is not deliberate indifference. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *Greeno*, 414 F.3d at 653; *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261 (7th Cir. 1996). Still, a plaintiff's receipt of some medical care does not automatically defeat a claim of deliberate indifference if a fact finder could infer the treatment was "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate" a medical condition. *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) (citation omitted).

*Edwards v. Snyder*, — F.3d — , 2007 WL 675506 (7th Cir. 2007).

Applying this standard to the allegations in the complaint, the Court is unable to dismiss the claims against the Doe Defendants at this time. However, Plaintiff's simple allegation that Ramos and Bedinger knew of the actions of Jane Doe and John Doe does not present a viable claim against either of them for deliberate indifference to his medical needs. Accordingly, Ramos and Bedinger are dismissed from Count 2 with prejudice.

## COUNT 3

After his brief visit to the health care unit, Plaintiff was taken to the segregation unit by Defendants Baker and Bedinger. Upon his arrival in that unit, Plaintiff alleges that he was "grabbed and slammed into a wall by a gang of correctional officers," who then carried him into the shower area and assaulted him. He specifically alleges that Defendants Dagner, Witthoft, and Casten participated in this assault.

As discussed above in Count 1, the intentional use of excessive force by prison guards

against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under Section 1983. *Hudson*, 503 U.S. at 6-7; *DeWalt*, 224 F.3d at 619. Therefore, the Court is unable to dismiss the claims against Dagner, Witthoft, and Casten at this point in the litigation.

Conversely, Plaintiff makes no allegation that either Baker or Bedinger participated in this assault; they simply escorted him from the medical unit to the segregation unit. Therefore, Baker and Bedinger are dismissed with prejudice from Count 3.

**COUNT 4**

Following the assault on him as alleged in Count 3, Plaintiff asked for medical treatment. Defendants Dagner, Witthoft, and Casten refused that request, and Plaintiff spent the night in his cell "bleeding from the head." The next morning, Plaintiff was taken to the medical unit by C/O Reynolds, where he received medical treatment from Medical Technician Reed.[1]

Applying the standards set forth above in Count 2, the Court is unable to dismiss this claim against Dagner, Witthoft, and Casten at this time.

**COUNT 5**

To substantiate his medical claim as alleged in Count 4, Plaintiff attempted to obtain copies of his medical records. The Illinois Department of Corrections' ("IDOC") policy required that an inmate pay for copies of his medical records, but Plaintiff could not afford the copies. He filed a grievance over obtaining copies of his medical records, but Defendant Middendorf denied that grievance. He appealed to the Administrative Review Board ("ARB"), but the ARB failed to respond to that appeal.

---

[1] Neither Reynolds or Reed is a party to this action.

"[A] state's inmate grievance procedures do not give rise to a liberty interest protected by the due process clause." *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1995). Furthermore, "[a] right to petition for redress of grievances does not imply a right to free writing paper and stamps." *Johnson v. Daley*, 339 F.3d 582, 586 (7th Cir. 2003). *See also Lewis v. Sullivan*, 279 F.3d 526, 528 (7th Cir. 2002) ("[T]here is no constitutional entitlement to subsidy."). Therefore, this claim is without merit, and Count 5 is dismissed from this action with prejudice.

## COUNT 6

Plaintiff alleges that the assault on him, as alleged in Count 1, occurred due to a vast conspiracy of retaliation against him. He also claims that a disciplinary report written by Baker on June 1, 2003, was falsified, and that the ticket was written as part this conspiracy of retaliation. His basis for claiming retaliation is not completely clear, but he alleges that Baker, Eubanks, and Holton were parties to this conspiracy.

In June 2002, Plaintiff filed an 80-page motion in a criminal case pending against him in Madison County, Illinois. In that motion, he charged certain state officials, including members of IDOC, with attempting to thwart his investigative efforts connected with that pending criminal case. Approximately a week after mailing that motion from Pontiac, Plaintiff was approached by Lieutenant French (allegedly related to C/O French, who had written a disciplinary ticket against Plaintiff in June 2001).[2] Lieutenant French made some veiled threats against him, and the next day Plaintiff was transferred to Menard. After that transfer, Plaintiff alleges that Lt. French "pulled strings and used undue influence" with officers at Menard, which culminated with the June 1, 2003, assault on Plaintiff and a subsequent falsified disciplinary ticket written by Defendant Baker.

---

[2] Neither French is a party to this action.

Prison officials may not retaliate against inmates for filing grievances or otherwise complaining about their conditions of confinement.  *See, e.g., Walker v. Thompson*, 288 F.3d 1005 (7th Cir. 2002); *DeWalt v. Carter*, 224 F.3d 607 (7th Cir. 2000); *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); *Cain v. Lane*, 857 F.2d 1139 (7th Cir. 1988).  Furthermore, "[a]ll that need be specified is the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer."  *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002).  Naming the suit and the act of retaliation is all that is necessary to state a claim of improper retaliation.  *Id.*

Although tenuous, Plaintiff's claim of retaliation against Defendants Baker, Eubanks, and Holton cannot be dismissed at this time.

## COUNT 7

Plaintiff's final claim involves the grievance he filed on June 3, 2003, accusing Baker of falsifying the disciplinary ticket.  He alleges that Middendorf failed to respond to that grievance. He further states that he mailed a copy of the grievance to the ARB in October 2003, but they also failed to respond to the grievance.

Again, "a state's inmate grievance procedures do not give rise to a liberty interest protected by the due process clause."  *Antonelli*, 81 F.3d at 1430.  Therefore, this claim is without merit, and Count 7 is dismissed from this action with prejudice.

## MOTION FOR APPOINTMENT OF COUNSEL (DOC. 10)

There is no absolute right to appointment of counsel in a civil case.  *Cook v. Bounds*, 518 F.2d 779 (4th Cir. 1975); *Peterson v. Nadler*, 452 F.2d 754 (8th Cir. 1971).  In making such a determination, a court must consider whether the plaintiff is competent to represent himself given the complexity of the case, and if he is not, whether the presence of counsel would make a difference

in the outcome of his lawsuit. *Greeno v. Daley*, 414 F.3d 645, 658 (7th Cir. 2005) (*citing Farmer v. Haas*, 990 F.2d 319, 322 (7th Cir. 1993)). Further, when deciding whether to appoint counsel, the Court must first determine if a *pro se* litigant has made reasonable efforts to secure counsel before resorting to the courts. *Gil v. Reed*, 381 F.3d 649, 656 (7th Cir. 2004) (*quoting Jackson v. County of McLean*, 953 F.2d 1070, 1072 (7th Cir. 1992)).

In this case, Plaintiff makes no showing that he has attempted to retain counsel. Additionally, after examining the documents submitted to this Court by Plaintiff, it appears that Plaintiff is more than capable of presenting his case and handling the issues involved. Therefore, applying these standards to the instant case, the Court finds that appointment of counsel is not warranted. Accordingly, Plaintiff's motion for appointment of counsel (Doc. 10) is **DENIED without prejudice**.

### MOTION FOR PROHIBITORY ORDER AND PERMANENT INJUNCTION/HEARING (DOCS. 11, 12)

In this 106-page motion, Plaintiff asserts that IDOC officials are conspiring with members of the Illinois state court system in order to bring about his death. Among other accusations, Plaintiff believes that these individuals are using some form of spy technology to "process a person's thoughts," and that some form of "virtual reality" has been created to manipulate Plaintiff and other inmates, essentially "a real-life version of *The Matrix* (*i.e.*, the movie)."[3] Not surprisingly, he seeks a court order directing Defendants to cease these actions, as well as a federal investigation into his allegations, placement in the federal witness protection program, $100 million dollars in damages for his suffering, and other directives too numerous to set forth at this time.

---

[3] Plaintiff also draws parallels between himself and characters in the movies *Trading Places*, *Minority Report*, *The Green Mile*, *Manchurian Candidate*, and *Primal Fear*.

In *Neitzke v. Williams*, 490 U.S. 319 (1989), the Court noted that a district court has

> the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless. . . . [such as] claims describing fantastic or delusional scenarios, claims with which federal district judges are all too familiar.

*Id.* at 327-28. Plaintiff's allegations – that Defendants are creating a virtual reality in order to control him and to orchestrate his death – draw just such a "fantastic or delusional scenario." The Court will not indulge him. This motion is thus **DENIED** in its entirety. It follows, therefore, that Plaintiff's motion for a hearing on this motion (Doc. 12) is now **MOOT**.

## DISPOSITION

**IT IS HEREBY ORDERED** that **COUNT 5** and **COUNT 7** are **DISMISSED** from this action with prejudice.

**IT IS FURTHER ORDERED** that Defendants **BEDINGER**, **MIDDENDORF**, and **RAMOS** are **DISMISSED** from this action with prejudice.

The Clerk is **DIRECTED** to prepare Form 1A (Notice of Lawsuit and Request for Waiver of Service of Summons) and Form 1B (Waiver of Service of Summons) for Defendants **BAKER, CASTEN, DAGNER, EUBANKS, HOLTON**, and **WITTHOFT**. The Clerk shall forward those forms, USM-285 forms submitted by Plaintiff, and sufficient copies of the complaint to the United States Marshal for service.

The United States Marshal is **DIRECTED**, pursuant to Rule 4(c)(2) of the Federal Rules of Civil Procedure, to serve process on Defendants **BAKER, CASTEN, DAGNER, EUBANKS, HOLTON**, and **WITTHOFT** in the manner specified by Rule 4(d)(2) of the Federal Rules of Civil Procedure. Process in this case shall consist of the complaint, applicable Forms 1A and 1B, and this Memorandum and Order. For purposes of computing the passage of time under Rule 4(d)(2), the

Court and all parties will compute time as of the date it is mailed by the Marshal, as noted on the

USM-285 form.  Service shall not be made on the Doe Defendants until such time as Plaintiff has

identified them by name on a USM-285 form and in a properly filed amended complaint.  Plaintiff

is **ADVISED** that it is his responsibility to provide the Court with the names and service addresses

for these individuals.

With respect to former employees of IDOC who no longer can be found at the work address

provided by Plaintiff, IDOC shall furnish the Marshal with the Defendant's last-known address upon

issuance of a Court order which states that the information shall be used only for purposes of

effectuating service (or for proof of service, should a dispute arise), and any documentation of the

address shall be retained only by the Marshal.  Address information obtained from IDOC pursuant

to such order shall not be maintained in the Court file nor disclosed by the Marshal.

The United States Marshal shall file returned waivers of service, as well as any requests for

waivers of service that are returned as undelivered, as soon as they are received.  If a waiver of

service is not returned by a defendant within **THIRTY (30) DAYS** from the date of mailing the

request for waiver, the United States Marshal shall:

- Request that the Clerk prepare a summons for that defendant who has not yet returned a waiver of service; the Clerk shall then prepare such summons as requested.

- Personally serve process and a copy of this Order upon that defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure and 28 U.S.C. § 566(c).

- Within ten days after personal service is effected, the United States Marshal shall file the return of service for that defendant, along with evidence of any attempts to secure a waiver of service of process and of the costs subsequently incurred in effecting service on said defendant.  Said costs shall be enumerated on the USM-285 form and shall include the costs incurred by the Marshal's office for photocopying additional copies of the summons and complaint and for preparing new USM-285 forms, if required.  Costs of service will be taxed against the personally-served defendant in

accordance with the provisions of Federal Rule of Civil Procedure 4(d)(2) unless the defendant shows good cause for such failure.

Plaintiff is **ORDERED** to serve upon each defendant or, if appearance has been entered by counsel, upon that attorney, a copy of every further pleading or other document submitted for consideration by this Court.  He shall include with the original paper to be filed with the Clerk of the Court a certificate stating the date that a true and correct copy of any document was mailed to defendant or his counsel.  Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this cause is **REFERRED** to a United States Magistrate Judge for further pretrial proceedings.

Further, this entire matter is hereby **REFERRED** to a United States Magistrate Judge for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral*.

Plaintiff is under a continuing obligation to keep the Clerk and each opposing party informed of any change in his whereabouts.  This shall be done in writing and not later than seven (7) days after a transfer or other change in address occurs.

**IT IS SO ORDERED.**

DATED:  03/22/07

s/ G. Patrick Murphy
G. PATRICK MURPHY
Chief United States District Judge

Page 11 of  11